Federal Defenders
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

October 21, 2026

***By CM/ECF***
The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *United States v. Mohammad Al-Saadi***
**26 Cr. 220 (CM)**

Dear Judge McMahon:

We write to emphasize our concern that the Government's SAMs are eroding Mohammad Al-Saadi's ability to meaningfully participate in his defense and to obtain the effective assistance of counsel.

As set forth in our letter from yesterday, the Government notified the defense on Monday that Mr. Al-Saadi will be permitted only one call per month with his family, who resides overseas. The defense understands that this decision was based on the Government's allegations of SAMs violations from July and September—allegations that lack adequate factual support and have not been tested in court. This blatantly punitive measure compounds other forms of punishment Mr. Al-Saadi experiences because of the SAMs. As laid out in our opening SAMs challenge and our reply, such punishments include inadequate access to food, inadequate access to sunlight and exercise, inadequate access to Arabic language media and reading materials, and inadequate access to counsel and his discovery. For example, although Mr. Al-Saadi has received an air-gapped laptop with his discovery uploaded, he cannot bring the computer to meetings with his attorneys and he is also not permitted access to the charging cord while he is using the computer, which reduces the utility of the laptop. Mr. Al-Saadi also continues to experience substantial delays in his receipt of reading materials sent to him by counsel. Although the parties remain in discussions about how to improve Mr. Al-Saadi's timely receipt of Arabic reading materials, the issue persists and is straining the attorney-client relationship.

As previewed in our letter from July 22, 2026, these onerous restrictions—which are intensifying—are wreaking havoc on Mr. Al-Saadi's ability to meaningfully contribute to his case and interact with defense counsel. Since the September 9, 2026, status conference, Mr. Al-Saadi has continued to endure complete solitary confinement, periodically interrupted by meetings with his attorneys. During those meetings, it remains extremely difficult to discuss the case or the evidence because Mr. Al-Saadi is

understandably focused on the Government's inhumane treatment of him. Unlike other SAMs detainees, who have family in the United States and can receive social visitors, Mr. Al-Saadi has no such opportunity. Unlike other SAMs detainees who understand English or Spanish and can more readily access media and reading materials in their language through MDC Brooklyn's facilities, Mr. Al-Saadi has no such opportunity. It is becoming clearer that, without some relief from the SAMs—their substance and/or their implementation—the Government is depriving Mr. Al-Saadi of his Fifth and Sixth Amendment rights to due process, to meaningfully participate in his defense, and to the effective assistance of counsel.

Indeed, the SAMs in their present form make a mockery of the presumption of innocence, as the Government has used them to effectively bury Mr. Al-Saadi alive based on one-sided, untested determinations about his dangerousness—determinations that rely almost exclusively on charges in an Indictment and not on a conviction. No defense team can be expected to practice law in this way. No defense attorney can make progress on building a defense with their client's assistance when the client is suffering the effects of extreme isolation and is justifiably consumed by his insufficient access to food, reading materials, exercise, sunlight, and family. And no defense attorney can meaningfully investigate and prepare a defense against highly unusual charges of an international nature under these conditions. Specifically, given the vagueness of the Government's concerns about Mr. Al-Saadi's family calls in July and September, the defense lacks a clear understanding of the boundaries of the SAMs, particularly as it pertains to sharing information with third parties located overseas on Mr. Al-Saadi's behalf. This limits our ability to, for example, identify and form relationships with potential witnesses and advocate for Mr. Al-Saadi with governmental entities who may be better situated to address his confinement conditions through diplomatic channels.

The defense is sensitive to the fact that the Court may bristle at receiving two letters back-to-back about an issue that is otherwise fully briefed. But the Government's SAMs have created a real sense of urgency. The SAMs' content and implementation are forcing the defense team into a perfunctory and ineffective role. Mr. Al-Saadi cannot have any confidence that he will receive a fair trial and a meaningful defense when his attorneys are unable to change inhumane confinement conditions that presume his guilt and punish him accordingly. The defense urges the Court to convene a conference as soon as possible to address these issues and/or to hold an evidentiary hearing regarding the Government's allegations of SAMs violations from July and September.

Respectfully submitted,

/s/

Andrew John Dalack, Esq.
Benjamin Silverman, Esq.
Hana Yamahiro, Esq.
Assistant Federal Defenders
Tel: (646) 315-1527

Cc: Counsel of record (by ECF)